## Levengood Appeal.

Argued April 22, 1954. Before STERN, C. J., STEARNE, JONES, BELL, CHIDSEY, MUSMANNO and ARNOLD, JJ.

*John C. Clemmens,* with him *Samuel R. Liever,* for appellant.

*Frederick J. Bertolet,* with him *Randolph C. Ryder,* Deputy Attorney General and *Frank F. Truscott,* Attorney General, for appellee.

OPINION BY MR. JUSTICE ALLEN M. STEARNE, May 24, 1954:

Lee E. Levengood appeals from an order of the Court of Common Pleas of Berks County affirming an order of the Secretary of Revenue suspending appellant's motor vehicle operating privileges for a period of three months. Appellant was involved in an automobile accident which resulted fatally to a pedestrian.

Supersedeas was denied by this Court. According to the printed record the suspension order expired April 29, 1954, which rendered the case moot. It was disclosed, however, after argument, that the Commonwealth and appellant had agreed, despite the rulings of the Secretary and the court, that appellant should continue his operating privileges pending the final disposition of this appeal. By our direction a written stipulation to this effect was filed in this Court.

The question presented by this appeal is whether or not, in this fatal accident, the charge of negligence was of such a nature that it would warrant a court, in its discretion, to suspend the license.

In *Commonwealth v. Bushey,* 368 Pa. 67, 68, 82 A. 2d 39, it was said: ". . . By the use of the word 'negligence', we necessarily implied negligence of such a character that, in the discretion of the court, the defendant should have inflicted upon him the punitive

penalty of having his license suspended and that the public required such protection." A suspension of a driver's license is not required solely because he was involved in a fatal accident wherein he was guilty of negligence. Negligence alone is insufficient. The negligence must be of such nature, in the discretion of the hearing judge, as to warrant such punitive punishment necessary for the protection of the public.

The evidence, consisting chiefly of a statement signed by appellant, is meager. According to the police officer who secured the statement, the accident occurred on January 26, 1953, at 8:30 p.m.; the weather was clear and dark; there was no road lighting; defendant was traveling forty miles an hour in a fifty mile zone; deceased was wearing dark clothing; as a car approached in the opposite direction, appellant lowered his lights. Appellant related in his statement that ". . . at the instant I hit this man, I saw this black object—his back; I heard the smack. . . ." In this statement also appear the following questions and answers between a county detective and appellant: "Q. Now, how far was this man away from you when you first saw him? A. I don't believe it was from here to the door when I saw him. Q. In other words, somewhere between ten and fifteen feet? A. Yes."

The learned trial judge, upon this evidence, stated, in respect to appellant's negligence: ". . . He admits that he did not see the pedestrian until he was 10 to 15 feet away, when he applied his brakes and then traveled about 25 to 30 feet. The assured clear distance rule requires that a driver keep his vehicle under such control that he can always stop within the distance that he can clearly see. . . ." He also stated: ". . . the [appellant] not only could but did see the deceased when he was in front of the automobile. This being so, he was negligent. . . ."

304

The decisive question is not negligence. *Assuming* appellant's negligence, was it of such a quality that would indicate, in the discretion of the trial judge, the penalty of revocation of the license? After careful consideration we have concluded that it was not. The estimated view of ten to fifteen feet, which appellant was supposed to have had before decedent was hit, was suggested in a leading question by the officer. The accident occurred on a dark night, the pedestrian was wearing dark clothes, and appellant was not traveling at an improper speed. Whatever negligence may have existed, it does not appear to us to require punitive punishment. To so impose it, in the circumstances of this case, constituted a manifest abuse of discretion.

Order reversed.